UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ERNEST SPEER,                          )
                                       )
            Petitioner,                )
                                       )
        vs.                            )          Case No. 4:12CV2220 ACL
                                       )
IAN WALLACE,                           )
                                       )
            Respondent.                )

## MEMORANDUM AND ORDER

This matter is before the Court on the Petition of Ernest Speer for a Writ of Habeas Corpus

under 28 U.S.C. § 2254.

## I.   Procedural History

Speer is currently incarcerated at Southeast Correctional Center in Charleston, Missouri,

pursuant to the Sentence and Judgment of the Circuit Court of the City of St. Louis, Missouri.

(Respt's Ex. B at 150-55.)

On December 3, 2008, a jury found Speer guilty of murder in the first degree and armed

criminal action.   (Respt's Ex. A at 534.)   The court sentenced Speer to consecutive terms of life

imprisonment without parole for the murder in the first degree offense and life imprisonment for

the armed criminal action offense.   (Respt's Ex. B at 150-55.)

Speer raised two points on direct appeal of his convictions.   (Respt's Ex. D.)   In his first

point, Speer argued that the trial court erred in overruling Speer's objection to the testimony of

state witness Tina Schniepp-Babel, the victim's sister, about an incident between Speer and the

victim in the St. Charles County Courthouse.   *Id.* at 11-12.   In his second point, Speer argued that

the trial court plainly erred in overruling Speer's Motion to Suppress Statements and admitting

into evidence his alleged statement that he deserved to die because of what he had done.   *Id.* at

13-14.   On October 20, 2009, the Missouri Court of Appeals affirmed Speer's convictions. (Respt's Ex. F.)

Speer filed a *pro se* motion for post-conviction relief under Rule 29.15.   (Respt's Ex. H at 4-29.)   After appointment of counsel, Speer filed an amended post-conviction relief motion and request for evidentiary hearing, in which he alleged the following ineffective assistance of counsel claims: (1) trial counsel had an actual conflict of interest; (2) trial counsel failed to call Speer to testify at trial in his defense after he indicated a desire to testify; (3) trial counsel failed to subpoena and call Norman Showers and Ricky Fields as alibi witnesses at trial; and (4) trial counsel failed to subpoena and call Melissa Lee as a witness at trial.   (Respt's Ex. I at 1-46.)   Speer also filed a Motion for Change of Judge or Disqualification, in which he argued that he could not have a fair and impartial post-conviction proceeding before Judge John Garvey based on Judge Garvey's comments at Speer's sentencing hearing.   *Id.* at 35-39.   Speer's Motion for Change of Judge was denied, but his request for an evidentiary hearing was granted.   *Id.* at 40.   An evidentiary hearing was held on Speer's motion on November 5, 2010, at which Speer, trial counsel, Norman Showers, Ricky Fields, and Melissa Lee testified.   (Respt's Ex. G.)   On November 30, 2010, the motion court denied Speer's amended motion.   *Id.* at 42-52.

Speer raised five points in his appeal from the denial of post-conviction relief.   (Respt's Ex. J.)   In his first point, Speer argued that the motion court abused its discretion in denying Speer's request for a change of judge.   *Id.* at 15.   In his second point, Speer argued that he was denied his right to conflict-free counsel and effective assistance of counsel in that trial counsel had an actual conflict of interest.   *Id.* at 16.   In his third point, Speer argued that he was denied effective assistance of counsel when trial counsel failed to call Speer to testify at trial in his defense after he indicated a desire to do so.   *Id.* at 18.   In his fourth point, Speer argued that he was denied effective assistance of counsel when trial counsel failed to subpoena and call Norman

Showers and Ricky Fields. *Id.* at 19. In his fifth point, Speer argued that he was denied effective assistance of counsel when trial counsel failed to subpoena and call Melissa Lee as a witness at trial. *Id.* at 20. The Missouri Court of Appeals affirmed the decision of the motion court. (Respt's Ex. L.)

Speer filed the instant Petition on November 30, 2012. (Doc. 1.) Speer raises the following grounds for relief: (1) the trial court erred in overruling his objection to the testimony of Tina Schniepp-Babel regarding an incident between Speer and the victim in the St. Charles County Courthouse; (2) the trial court plainly erred in overruling Speer's Motion to Suppress Statements and admitting his statement "After what I've done, I don't deserve to live"; (3) the motion court abused its discretion in denying Speer's request for a change of judge based on Judge Garvey's comments during sentencing; (4) he was denied his right to conflict-free counsel and effective assistance of counsel in that trial counsel had an actual conflict of interest; (5) trial counsel were ineffective when they failed to call Speer to testify at trial in his defense after he indicated a desire to do so; (6) trial counsel were ineffective when they failed to subpoena and call Norman Showers and Ricky Fields as alibi witnesses at trial; and (7) trial counsel were ineffective for failing to subpoena and call Melissa Lee as a witness at trial. (Doc. 1.)

On April 1, 2013, Respondent filed a Response to Order to Show Cause, in which he argues that Grounds One and Two are procedurally defaulted, and all of Speer's claims fail on their merits. (Doc. 9.)

## II. Facts

The sufficiency of the evidence is not in dispute. The Court's summary of the facts below is taken directly from the decision of the Missouri Court of Appeals affirming the denial of post-conviction relief. (Respt's Ex. L at 2-3)

Speer and Sara Speer ("Victim") were married in 2002. In December 2006, problems

began in the marriage.   Victim's sister, Tina Schniepp-Babel, who is an attorney, helped Victim file for divorce.   While at the St. Charles County Courthouse in connection with the divorce, Speer and Victim had an argument, during which Speer lunged at Victim and threatened to hurt her.   Both Speer and Victim were employed at Tocco Foods, a wholesale food distributor located in the City of St. Louis.   Speer normally started his work around 3:30 or 4:00 a.m. and Victim normally started work around 8:00 a.m.

On October 24, 2007, Victim entered the parking lot of Tocco Foods at approximately 8:00 to 8:10 a.m.   Shortly after Victim arrived at work, two Tocco Food employees, Joe Mowry (Mowry) and Peter Tocco (Tocco), heard a scream and two gunshots.   Mowry called 9-1-1 while Tocco went to the front dock to investigate.   Tocco found Speer sitting on a bench on the front dock smoking a cigarette.   Tocco asked Speer if he heard a noise and Speer stated that the noise was probably a truck backfiring twice.   Tocco went back inside but, after discussing the noise with Mowry, went back outside to take another look.   Tocco found Victim dead in the parking lot. Victim had been shot twice.

Shortly thereafter, Speer was seen leaving the "paper room," a room where Tocco Foods stored paper and chemicals.   Police officers searched the premises and found a gun, two magazines, and cartridges hidden behind a freezer in the "paper room."   Ballistics testing indicated that spent casings found at the scene and one of the bullets recovered from Victim's body were fired from the gun found in the paper room.   Speer's DNA was recovered from the gun's trigger and grip.

The jury convicted Speer on both counts and the court sentenced Speer to two consecutive life sentences without the possibility of parole.

### III.   Standard of Review

A federal court's power to grant a writ of habeas corpus is governed by 28 U.S.C. §

2254(d), which provides:

> (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court construed Section 2254(d) in *Williams v. Taylor*, 529 U.S. 362

(2000).   With respect to the "contrary to" language, a majority of the Court held that a state court

decision is contrary to clearly established federal law "if the state court arrives at a conclusion

opposite to that reached by [the Supreme Court] on a question of law" or if the state court

"decides a case differently than [the] Court has on a set of materially indistinguishable facts."

*Id.* at 405.   Under the "unreasonable application" prong of § 2254(d)(1), a writ may issue if "the

state court identifies the correct governing legal rule from [the Supreme Court's] cases but

unreasonably applies [the principle] to the facts of the particular state prisoner's case." *Id.*

Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether

the state court's application of clearly established federal law was objectively unreasonable."

*Id.* at 410.   Although the Court failed to specifically define "objectively unreasonable," it

observed that "an unreasonable application of federal law is different from an incorrect

application of federal law." *Id.* at 410.

## IV. Procedural Default

Respondent contends that Speer procedurally defaulted Grounds One and Two by failing to preserve these claims for review on direct appeal. In Ground One, Speer argues that the trial court erred in overruling his objection to the testimony of Victim's sister regarding an incident between Speer and Victim in the St. Charles County Courthouse. In Ground Two, Speer argues that the trial court plainly erred in overruling Speer's Motion to Suppress Statements and admitting his statement "After what I've done, I don't deserve to live."

"Ordinarily, a federal court reviewing a state conviction in a 28 U.S.C. § 2254 proceeding may consider only those claims which the petitioner has presented to the state court in accordance with state procedural rules." *Arnold v. Dormire,* 675 F.3d 1082, 1086–87 (8th Cir. 2012) (quotation marks omitted). "In Missouri, a claim must be presented at each step of the judicial process to avoid default." *Id.* at 1087.

Until recently, there was a split within the Eighth Circuit regarding whether plain-error review by a state appellate court waived a procedural default, and courts were permitted to choose which line to follow. *Clark v. Bertsch,* 780 F.3d 873, 876 (8th Cir. 2015) (*comparing Toney v. Gammon,* 79 F.3d 693, 699 (8th Cir. 1996) and *Hayes v. Lockhart,* 766 F.2d 1247, 1253 (8th Cir. 1985) (state court's plain-error review does not excuse procedural default) *with Thomas v. Bowersox,* 208 F.3d 699, 701 (8th Cir. 2000), *Bannister v. Armontrout,* 4 F.3d 1434, 1445 n. 6 (8th Cir. 1993) and *Williams v. Armontrout,* 877 F.2d 1376, 1379 (8th Cir. 1989) (state court's plain-error review permits federal review)). In 2011, the Eighth Circuit, sitting *en banc,* directed that, in the event of an intra-circuit split, future panels were to "determine and follow the earliest precedent." *Id.* (*citing Mader v. United States,* 654 F.3d 794, 800 (8th Cir. 2011)). The Court then determined that the earliest controlling panel opinion on the effect of plain-error

review is *Hayes,* which held that such claims are procedurally defaulted and unreviewable, absent cause and prejudice. *Id.* (*quoting Hayes,* 766 F.2d at 1253).

The Missouri Court of Appeals found that Speer failed to preserve the claim raised in Ground One for review by not properly raising it in his motion for new trial, and limited their review to plain error review. (Respt's Ex. F at 2-3.) Speer conceded on direct appeal that he failed to preserve the claim contained in Ground Two by not objecting when the state introduced his statements into evidence, and sought plain error review only. (Respt's Ex. D at 13-14, 21-22.) The court accordingly reviewed this claim for plain error. (Respt's Ex. F at 5.)

Speer does not attempt to excuse his procedural default on the basis of cause and prejudice or manifest injustice. Thus, Speer's claims in Grounds One and Two are procedurally defaulted.

## V.   Speer's Claims

As previously noted, Speer asserts seven grounds for relief. The undersigned will discuss Speer's grounds for relief in turn.

**1.      Ground One**

Speer argues that the trial court erred in overruling his objection to the testimony of Victim's sister regarding an incident between Speer and Victim in the St. Charles County Courthouse. Speer contends that admission of the testimony regarding Speer's alleged prior misconduct violated his right to due process. The Court has already found that this claim is procedurally defaulted. It fails on its merits as well.

As the Supreme Court has emphasized, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions," such as the admissibility of evidence at trial. *See Estelle v. McGuire,* 502 U.S. 62, 68 (1991). "In conducting habeas

review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* Evidentiary issues can, however, form the basis for habeas relief if the error constitutes an independent constitutional violation. *See Bounds v. Delo,* 151 F.3d 1116, 1119 (8th Cir. 1998). "A state court's evidentiary rulings can form the basis for federal habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." *Id.* (quoting *Parker v. Bowersox,* 94 F.3d 458, 460 (8th Cir. 1996)). To meet this standard, a petitioner must show a reasonable probability that the evidentiary errors affected the trial's outcome. *See Meadows v. Delo,* 99 F.3d 280, 283 (8th Cir. 1996).

At trial, Victim's sister, Ms. Schniepp-Babel, testified over Speer's objection that the following occurred at the St. Charles County Courthouse:

> [Victim] and I were walking toward the first floor, and we ran into [Speer] and his—[Speer] and his attorney, Amanda Verett. And [Victim] and he were talking, and he was becoming more agitated and got very angry and kind of lunged forward at her and said he was going to hurt her. Whereupon [Victim] was very scared, and she—I kind of pushed her back away from him.
>
> [Defense Counsel]: And what, if anything was done to get the defendant away from her?
>
> [Ms. Schniepp-Babel]: Well, she—his attorney tried to move him away, and [Victim] tried to get to the other—to the bailiffs and to the police, and so she went into a room very quickly, and I followed, and he was—he followed after her, and the door shut, and he was looking at her through one of those windows in the door, and he—I was afraid because of just the way he was looking at her. And he was redfaced and shaking his head, and she had a Manila envelope that she was trying to hide behind.

(Respt's Ex. A at 194.)

Speer raised this claim in his direct appeal. The Missouri Court of Appeals, reviewing for plain error, held as follows:

> Generally, the admission of evidence of prior uncharged misconduct is

inadmissible in order to demonstrate the propensity of a defendant to commit such crimes. *State v. Haslett*, 283 S.W.3d 769, 781 (Mo. App. S.D. 2009). However, "[e]vidence of uncharged misconduct is admissible if it tends to establish motive, intent, identity, the absence of mistake or accident, or a common scheme or plan." *State v. Turner*, 242 S.W.3d 770, 778 (Mo. App. S.D. 2008), *see also State v. Bernard*, 849 S.W.2d 10, 13 (Mo. banc 1993).

The testimony presented in this case demonstrated Defendant threatened the victim and displayed hostility toward her during their dissolution proceedings. Accordingly, it was admissible in that it tended to establish Defendant's guilt of the charged offenses because the evidence established his hostility toward the victim and his motive to injure her. The trial court did not commit plain error in its admission of Witness' testimony. Point denied.

(Respt's Ex. F at 3-4.)

Speer fails to demonstrate a due process violation resulting from the admission of Ms. Schniepp-Babel's testimony. The Missouri Court of Appeals found that the trial court did not err in admitting evidence of Speer's uncharged misconduct because the evidence was relevant to establish Speer's motive to harm Victim. Further, in light of the significant amount of evidence presented regarding Speer's guilt, including DNA evidence, Speer cannot demonstrate that the outcome of the trial would have been different had the Victim's sister's testimony been excluded. The state court determinations were not based upon unreasonable determinations of the facts or misapplications of clearly established federal law. Thus, Ground One will be denied.

## 2. Ground Two

In Ground Two, Speer argues that the trial court plainly erred in denying his Motion to Suppress Statements and admitting his statement "After what I've done, I do not deserve to live." Speer alleges that the police coerced this statement from him by exploiting his nicotine addiction.

Prior to questioning Speer at the police department, officers advised him of his *Miranda* rights. (Respt's Ex. A at 304-05, 406-08.) Speer signed a written waiver of his rights to remain silent and to have an attorney present during questioning. *Id.* at 407. After more than an hour of questioning, Speer asked to speak to his attorney, and the interrogation ended. *Id.* at 411-13.

Three officers testified that, when Speer was being escorted from police headquarters to the Justice Center after the interrogation had ended, Speer asked one of the officers for a cigarette. (Respt's Ex. A at 162-63, 308, 330.)   Speer was told he could not have a cigarette because he was handcuffed at the time, and because he could not smoke in the Justice Center.   *Id.*   The officers testified that Speer then stated "After what I've done, I do not deserve to live" (*Id.* at 163, 330); or "After what I did today, I don't deserve to live" (*Id.* at 308).

The Missouri Court of Appeals held as follows regarding Speer's claim:

> Defendant clearly was informed of his rights, and there is no evidence that he was incapable of understanding those rights.   When Defendant was being moved from the police department to the Justice Center to be processed, Defendant voluntarily initiated the conversation with Officer, requesting to smoke a cigarette.   Officer responded that he would not acquiesce to Defendant's request because Officer would not remove the handcuffs and once they reached the Justice Center, there was a no smoking policy.   Defendant then retorted that, "After what I did today, I don't deserve to live."
> Officer's statement was merely responding to a question Defendant posited and was not intended to induce Defendant to make additional statements. Defendant voluntarily injected his comments that he was guilty.   The trial court did not plainly err in allowing the admission of Officer's testimony.   Point denied.

(Respt's Ex. F at 5.)

The Fifth Amendment ensures an accused the right to the presence of legal counsel during a custodial interrogation.   *Miranda v. Arizona*, 384 U.S. 436, 474 (1966).   However, a subsequent waiver can be established if "the accused himself initiates further communication, exchanges, or conversations with the police."   *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). "Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence."   *Miranda*, 384 U.S. at 478.   Therefore, when an accused in custody requests a lawyer and subsequently makes a statement to the police, the question is whether the accused was interrogated.   *Rhode Island v. Innis*, 446 U.S. 291, 298 (1980).   An accused's statement is not the product of a prohibited interrogation unless it is in response to questions that

the police know or "should know are reasonably likely to elicit an incriminating response from [the] suspect." *Id.* at 301.

The Missouri Court of Appeals found that Speer's statement was not a product of an interrogation but, rather, was a statement Speer voluntarily made after initiating conversation with the officers. Speer made a spontaneous statement after the interrogation had ended. Considering the evidence in the record, the court's determination was not based upon an unreasonable determination of the facts or a misapplication of federal law. Thus, Ground Two will be denied.

**3.     Ground Three**

In Ground Three, Speer argues that the motion court abused its discretion in denying Speer's request for a change of judge based on Judge Garvey's comments during sentencing. Speer contends that he was prejudiced by Judge Garvey's statements because they reflected his anger against Speer and his sympathy for Victim, and showed he had prejudged the issue of ineffective assistance of counsel.

At Speer's sentencing hearing, prior to imposing Speer's sentence, Judge Garvey stated:

> All right. I have a couple things to say after witnessing this trial. The first thing is, your premeditation on this case was cold-blooded, was deliberate, was well thought out. Somewhat. You want to blame it on a neighborhood, maybe even a city, the place that you picked to commit this murder. But what's interesting is your post meditation was just the worst. I don't think you ever contemplated that a gun makes a loud sound, that people call the police when a murder happens, and you never anticipated the unbelievable and excellent police work done in this case. That never crossed your mind.
> And so what we have here is you taking the life of this wonderful woman. This mother, daughter, wife, sister. That's what you did. So for that, I'm going to max you out. But I'm finished with you now. What I want to talk about now is the family who I watched throughout this trial. And the judge has a different perspective during a trial when a family is involved, because I get to see the family. And they had to go through this for these three or four days, and it was horrible. It was horrible. But they suffered it with dignity and class and grace. And their daughter, sister, mother would be very proud of the way that they acted in this case. You didn't even deserve this woman. You really didn't. Or this

family.

(Respt's Ex. A at 539-40.)

Speer filed a motion for change of judge when his post-conviction motion was assigned to Judge Garvey. (Respt's Ex. H at 35-39.) The motion was denied. *Id.* at 40. Speer raised this claim in his appeal from the denial of post-conviction relief. The Missouri Court of Appeals held:

> Although Judge Garvey's remarks were critical of [Speer], a judge's critical or hostile remarks to a party do not support a claim of bias or partiality; instead the comments must be considered in the context of all the judge's statements and the circumstances before the judge when the statements were made. *Haynes*, 937 S.W.2d 199 at 204. Considered in context, Judge Garvey's remarks do not display a disqualifying bias or prejudice, particularly on the issue of ineffective assistance of counsel, but merely the court's rationale for imposing the maximum sentence.
> Furthermore, [Speer] fails to allege the existence of any extrajudicial source of disqualifying bias or prejudice; therefore, the motion court did not abuse its discretion in denying [Speer]'s motion for change of judge. Based on the foregoing, [Speer]'s Point I is denied.

(Respt's Ex. L at 6-7.)

For a judge to be disqualified on the basis of personal bias and prejudice, the bias "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *U.S. v. Grinnell Corp.,* 384 U.S. 563, 583 (1966). The Court explained this 'extrajudicial source' concept as follows: "The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task." *Liteky v. U.S.,* 510 U.S. 540, 550-551 (1994).

In this case, there is no indication that the comments made by the trial judge derive from any extrajudicial source.   In fact, the judge himself indicated that his comments resulted from witnessing the trial and observing Victim's family during the course of the trial.   The comments were made in the context of explaining Speer's sentence.   There is no support in the record for Speer's claim that Judge Garvey's statements at sentencing revealed he had an opinion on the issues of ineffective assistance of counsel.   Thus, the state court's decision that Judge Garvey's remarks did not display a disqualifying bias or prejudice on the issue of ineffective assistance of counsel was not contrary to federal law.   This point will be denied.

**Ineffective Assistance of Counsel Claims:   Grounds Four through Seven**

In order to state a claim of ineffective assistance of trial counsel, Speer must meet the *Strickland* standard: he must demonstrate that his counsel's performance was deficient and that he was prejudiced by that performance.   *Strickland v. Washington,* 466 U.S. 668, 687 (1984). Deficient representation means counsel's conduct fell below the conduct of a reasonably competent attorney.   *Strickland,* 466 U.S. at 687.   To establish prejudice, Speer must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   *Id.* at 694.   Federal habeas review of a *Strickland* claim is highly deferential, because "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether the determination was unreasonable—a substantially higher threshold."   *Knowles v. Mirzayance,* 556 U.S. 111, 123 (2009) (internal quotations and citations omitted).

**4.      Ground Four**

In Ground Four, Speer argues that he was denied his right to conflict-free counsel and effective assistance of counsel in that trial counsel had an actual conflict of interest.   Speer

contends that he had a financial conflict of interest with counsel due to disputes about finances and that this conflict of interest caused counsel to fail to properly investigate the case.

Speer raised this claim in his post-conviction relief motion and in his appeal from the denial of post-conviction relief. A hearing was held on Speer's post-conviction relief motion, at which Speer and counsel testified. (Respt's Ex. G.) Speer testified that two different attorneys represented him during the trial. *Id.* at 91. Speer testified that, at one point, counsel informed him that his case was "at a standstill" until Speer paid them an additional $25,000. *Id.* at 92. Speer stated that on another occasion closer to trial, counsel requested an additional $5,000 or $6,000. *Id.* at 94. Speer testified that counsel threatened to withdraw if they did not receive the additional funding. *Id.* at 95. Counsel testified that they did request additional funding during their representation of Speer, and that it was explained to Speer at the beginning of the representation that he would pay additional funds after the initial retainer. *Id.* at 17, 48-49. Counsel testified that they did not ever threaten to put the case on hold or withdraw from the case if the additional funding was not received. *Id.* at 18-19, 49-50. Counsel testified that they did not believe their requests for additional funds affected their performance. *Id.* at 20, 49. One of Speer's attorneys stated that he thought he was "paid a lot of money, so [he] worked hard on the case." *Id.* at 49. The motion court found that Speer failed to show an actual conflict of interest or any adverse effect on his attorneys' performance. (Respt's Ex. H at 47.)

The Missouri Court of Appeals also rejected Speer's claim. The court stated:

> Here, the record shows that [Speer]'s trial attorneys zealously defended [Speer]. Counsel filed numerous pre-trial motions including a Motion to Suppress [Speer]'s Statements and several discovery motions. Counsel performed a substantial pre-trial investigation, including hiring a private investigator to review the scene with counsel, reviewing the extensive discovery, taking depositions, and meeting with [Speer] at least 10 times prior to trial. Furthermore, following the State's presentation of its case, [Speer] testified that he was satisfied with his attorneys' representation.
>
> [Speer] has failed to demonstrate that an actual conflict of interest existed

and that any alleged conflict affected the performance of counsel. "At a post-conviction relief evidentiary hearing, the motion court determines the credibility of the witnesses and is free to believe or disbelieve the testimony of any witness, including that of the Movant." *Hurst v. State*, 301 S.W.3d 112, 117 (Mo. App. E.D. 2010). The motion court clearly found [counsel]'s testimony to be more credible than that of [Speer]. [Speer] does not provide this Court with any reason why we should disregard the deference given to the motion court's findings. The motion court did not err in finding that no financial conflict of interest or any alleged conflict adversely affected counsel's performance.

(Respt's Ex. L at 9-10.)

"A claim for ineffective assistance of counsel arising from a conflict of interest does not require proof of the prejudice component of the *Strickland* test. Rather, the petitioner can establish a Sixth Amendment violation if he can demonstrate that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Johnson v. Norris,* 207 F.3d 515, 519 (8th Cir. 2000) (quoting *Cuyler v. Sullivan,* 446 U.S. 335, 348 (1980)). To make this showing, "the petitioner must prove both that his attorney acted under an actual conflict of interest, as opposed to just a potential one ... and that the conflict of interest actually affected the adequacy of the representation." *Id.* (citations omitted).

Speer failed to show that counsel had an actual conflict rather than a potential one or that the alleged conflict affected their performance. Counsel testified that it was their standard practice to receive an initial retainer and ask for additional funds as the case progressed. Counsel testified that they did not threaten to withdraw if they did not receive the additional funds, and that the request for additional funds did not affect their performance. There is no evidence in the record that the alleged financial conflict affected counsel's performance, as they filed a plethora of pre-trial motions, including the Motion to Suppress Statements discussed above. (Respt's Ex. B at 1-8.) Speer never complained of counsel's performance or alleged conflict of interest to the trial court at any point prior to or during the trial. While the jury deliberated, the court

questioned Speer regarding the assistance of trial counsel. (Respt's Ex. A at 531-33.) Speer testified that he was satisfied with the representation provided by counsel. *Id.* at 532. The appellate court's decision was not unreasonable or contrary to clearly established federal law. As a result, Ground Four will be denied.

5.    **Ground Five**

In Ground Five, Speer argues that trial counsel were ineffective when they failed to call Speer to testify at trial in his defense after he indicated a desire to do so.

Speer raised this claim in his post-conviction relief motion and in his appeal from the denial of post-conviction relief. At the hearing on his post-conviction relief motion, Speer testified that he told his attorneys during the trial that he wanted to testify. (Respt's Ex. G at 97.) Speer testified that one of his attorneys told him "Me and the boys in the office have discussed all this, and you're not testifying." *Id.* Speer stated that his attorneys were concerned about his criminal history, which included felony convictions for armed burglary and armed kidnapping. *Id.* at 97-98. Speer acknowledged that the trial judge questioned him regarding his right to testify after the state rested, and that he testified it was his decision not to testify. *Id.* at 121. Speer testified that, although he represented to the trial judge that it was his decision not to testify, he chose not to testify under the advisement of his attorneys. *Id.* Counsel testified that he advised Speer not to testify due to the "severe crimes of violence against women on his criminal history." *Id.* at 51. Counsel further testified that it was ultimately Speer's decision not to testify. *Id.* at 52.

The motion court denied Speer's claim, finding that it was Speer's decision not to testify, and that counsel's advice not to testify was wise trial strategy. (Respt's Ex. H at 49.) The Missouri Court of Appeals affirmed, holding:

"Generally, trial counsel's advice whether to testify is a matter of trial strategy, and does not constitute a ground for post-conviction relief, absent exceptional circumstances." *Hickey v. State*, 328 S.W.3d 225, 231 (Mo. App. E.D. 2010). "However, a defendant's right to testify on his own behalf is fundamental, and only that individual can waive the right." Id. The waiver of the right to testify must be made voluntarily and knowingly. Id.

Here, the motion court's finding that [Speer] chose not to testify at trial is supported by the record. Again, the motion court determines the credibility of the witnesses. *Hurst*, 301 S.W.3d at 117. [Defense counsel]'s testimony supports a finding that they did, in fact, advise [Speer] about his right to testify and that it was [Speer] who ultimately decided not to testify. The motion court did not err in denying [Speer]'s petition on this point.

(Respt's Ex. L at 11.)

The state courts reasonably applied *Strickland*. The record supports the state courts' finding that the trial court questioned Speer regarding his decision not to testify, and that Speer reported that it was his decision not to testify. (Respt's Ex. A at 495.) Further, counsel's advice not to testify was reasonable trial strategy in light of Speer's extensive criminal history. These are not easy decisions, and "[j]udicial scrutiny of counsel's performance is highly deferential, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment." *Bucklew v. Luebbers,* 436 F.3d 1010, 1016 (8th Cir. 2006) (citing *Strickland,* 466 U.S. at 689). Thus, trial counsel were not ineffective in failing to call Speer to testify. Ground Five will be denied.

**6.      Ground Six**

In Ground Six, Speer argues that trial counsel were ineffective when they failed to subpoena and call Norman Showers and Ricky Fields as alibi witnesses at trial.

Speer raised this claim in his post-conviction relief motion, and in his appeal from the denial of post-conviction relief. Both Showers and Fields testified at the hearing concerning Speer's post-conviction relief motion. Showers testified that he worked with Speer at Tocco Foods. (Respt's Ex. G at 4.) Showers testified that, when he arrived at work on the morning of

the crime at 7:00 or 7:30 a.m., he saw Speer standing on the front dock smoking a cigarette and said "good morning" to him. *Id.* at 5. Showers stated that he left Tocco Foods to go on a delivery at approximately 8:05 a.m. *Id.* at 6-7. Showers testified that he did not observe the shooting because it occurred after he left Tocco Foods. *Id.* at 9. Fields testified that he worked at Tocco Foods with Speer. *Id.* at 68. Fields testified that he saw Speer when he arrived at work at 5:00 a.m. on the day of the crime. *Id.* at 69. Fields stated that he left Tocco Foods to make a delivery at approximately 7:30 a.m. *Id.* at 70. Fields testified that he was not at Tocco Foods when the shooting occurred so he had "no idea what happened." *Id.* at 70-71. When asked whether he would have been willing to testify at Speer's trial, Fields stated "I don't know nothing. Why would I be able to?" *Id.* at 71. One of Speer's trial attorneys testified that he did not call Showers or Fields because they did not witness the incident so they had nothing to offer the defense. *Id.* at 26, 29.

The motion court denied Speer's claim, finding that the testimony of Showers and Field at the hearing revealed they had little to nothing to offer Speer as witnesses. (Respt's Ex. H at 50.) The Missouri Court of Appeals summarily denied Speer's claim, finding that these witnesses "would not have provided [Speer] with a viable defense." (Respt's Ex. L.)

The decision of the state courts was not contrary to or an unreasonable application of clearly established federal law. The testimony Showers and Fields provided at the post-conviction motion hearing reveals that they would not have aided Speer's defense. Both Showers and Fields left Tocco Foods prior to the crime and did not observe the incident. They did not claim that they were with Speer when the shooting occurred and, as such, could not provide Speer with an alibi. Thus, counsel were not ineffective in failing to call Showers or Fields. Ground Six will be denied.

7.      **Ground Seven**

In Ground Seven, Speer argues that trial counsel were ineffective for failing to subpoena and call Melissa Lee as a witness at trial.   Speer contends that Lee would have testified that the incident at the St. Charles County Courthouse did not happen the way Victim's sister described it.

Speer raised this claim in the post-conviction proceedings.   At the hearing on his post-conviction motion, trial counsel testified that Speer was adamant that Lee not testify. (Respt's Ex. G at 31, 39, 59.)   Counsel testified that Speer told him that Lee did not know anything about the case.   *Id.* at 59.   Counsel also stated that it was documented in the police report that Lee called Speer's cell phone soon after the murder and, when a detective answered the phone, Lee asked "Is it over?"   *Id.* at 39, 59.   Counsel testified that Speer never told them that Lee could refute Victim's sister's testimony regarding the courthouse incident.   *Id.* at 31-32, 59.

Lee testified that she was a friend and neighbor of Speer's.   *Id.* at 75.   Lee stated that Speer had asked her to come to the St. Charles County Courthouse because Victim had "said some statements" about Lee during the divorce proceedings, and Lee may be asked to testify.   *Id.* at 77.   Lee testified that she never saw an altercation between Victim and Speer when she was at the courthouse.   *Id.*   Lee further testified that Speer and Victim went inside the clerk's office at one point and she waited in the hallway outside the clerk's office.   *Id.* at 79-80, 86-88.   Lee stated that she thinks Victim's sister was also in the clerk's office with Speer and Victim, but she could not see any of them.   *Id.* at 88.   Lee testified that she could not remember anything that happened in the hallway.   *Id.*

The motion court rejected Speer's claim, noting "[w]hat this witness had to offer is a mystery to the court."   (Respt's Ex. H at 51.)   The court found that counsel's decision not to call Lee as a witness was sound trial strategy as Speer told counsel not to call Lee because she did not know anything about the case.   *Id.*   The Missouri Court of Appeals summarily denied this claim,

stating Lee's testimony would not have provided Speer with a viable defense. (Respt's Ex. L at 14).

The decision of the state courts was not contrary to or an unreasonable application of federal law. Lee's testimony at the post-conviction hearing revealed that she was not with Speer the entire time at the St. Charles County Courthouse. Lee also stated at the hearing that she could not remember what happened in the hallway of the courthouse. As such, Lee's testimony would not have refuted Victim's sister's testimony regarding the argument between Speer and Victim at the courthouse. Even if Lee were able to contradict Victim's sister's testimony regarding the argument, she would not be able to establish Speer's innocence of the murder in light of the significant evidence presented of Speer's guilt, including Speer's DNA on the murder weapon. Thus, trial counsel were not ineffective in failing to call Lee as a witness at trial.

## VI. Certificate of Appealability

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right. *See* 28 U.S.C. § 2253(c)(2); *Hunter v. Bowersox*, 172 F.3d 1016, 1020 (8th Cir. 1999). A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). In this case, Speer has failed to make a substantial showing of the denial of a constitutional right. The undersigned is not persuaded that the issues raised in his Petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, no Certificate of Appealability shall be issued.

## ORDER

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that the instant Petition for

a Writ of Habeas Corpus under 28 U.S.C. § 2254 be **denied** and be **dismissed with prejudice** by

separate judgment entered this date.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Petitioner be

denied a Certificate of Appealability if Petitioner seeks to appeal this Judgment of Dismissal.


Dated:   February 26, 2016


_Abbie Crites-Leoni_____
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE